1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEIGH ANGELO, *et al.*, | Case No. 1:21-cv-01609-JLT-CDB |
| Plaintiffs, | ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS |
| v. | |
| THOMSON INTERNATIONAL INC., | (Docs. 86, 87) |
| Defendant. | |

Currently before the Court is the motion of Defendant Thomson International Inc., filed November 21, 2023, pursuant to Fed. R. Civ. P. 26 and 37(a), for evidentiary sanctions barring Plaintiff Ashleigh Angelo from using and introducing certain medical records and testimony relating thereto, including testimony from her expert witness, Dr. Stanford T. Schulman.  (Doc. 87, hereinafter "Mot.").  The Court has reviewed the motion and supporting declarations and exhibits, as well as Plaintiff's opposition (Doc. 106, hereinafter "Opp.") with declarations and Defendant's reply (Doc. 110, hereinafter "Reply") and declaration.  The matter is under submission without hearing or oral argument pursuant to 28 U.S.C. § 636(b)(1)(A) Local Rule 302(c)(1).[1]

---

[1] To avoid the risk of appellate waiver or forfeiture, any party that disagrees with the undersigned's conclusion that Defendant's motion for sanctions is a non-dispositive matter within the jurisdiction of a U.S. magistrate judge may seek reconsideration by the assigned district judge. *See* Fed. R. Civ. P. 72(a); E.D. Cal. Local Rule 303; *Bastidas v. Chappell*, 791 F.3d 1155, 1162 (9th Cir. 2015).

**Background**

1

2      Plaintiff Ashleigh Angelo alleges that, in July 2020, she consumed an onion that was

3 sourced by Defendant Thomson International Inc. and soon after was infected with salmonella.

4 (Doc. 1 p. 5). She alleges her infection was related to a Salmonella Newport outbreak linked to

5 Defendant's onions.  Id.  She further claims that her salmonella infection caused her to contract

6 salmonellosis. Id.  She asserts she incurred medical bills, pharmacy expenses and suffered a loss

7 of income as a result of the salmonellosis. Id.  She raises four claims for relief against Defendant:

8 (1) strict liability; (2) breach of warranty; (3) negligence; and (4) negligence per se.  *Id*. at 8-11.

9      In its scheduling order, the Court ordered the parties to exchange initial disclosures

10 pursuant to Rule 26(a) no later than February 25, 2022.  (Doc. 14 p. 1).  The parties timely made

11 initial disclosures and engaged in written discovery.  Nonexpert discovery closed on August 29,

12 2023.  (Doc. 40).  Expert discovery originally was scheduled to close on November 7, 2023 (Doc.

13 40); however, the parties first sought and were granted a two-week extension (Doc. 64), and

14 thereafter a limited extension to December 15, 2023, for the purpose of completing the deposition

15 of three identified experts.  (Doc. 82).

16      Relevant here, notwithstanding that Plaintiff was seen at Centennial Hospital

17 ("Centennial") and diagnosed with pancreatitis in October 2020 that she claims is related to her

18 consumption of Defendant's onion, Plaintiff did not disclose Centennial until approximately three

19 weeks prior to the close of nonexpert discovery (on August 7, 2023).  Further, Plaintiff first

20 produced to Defendant records relating to her treatment at Centennial on the date nonexpert

21 discovery closed (August 29, 2023).   On that same date, Plaintiff also first disclosed ten other

22 medical providers that had been involved in the treatment of her and other plaintiffs involved in

23 this action.  (Mot. p. 8).

24      Separately, Plaintiff was seen at Babylon Health ("Babylon") in May 2022.  However,

25 Plaintiff did not update her Rule 26(a) initial disclosures to identify Babylon and did not identify

26 Babylon to Defendant until the date nonexpert discovery closed (August 29, 2023).  Plaintiff did

27 not produce Babylon's records to Defendant until September 22, 2023.

28      Defendant asserts that Plaintiff's conduct summarized above violates the rules of

1    discovery and warrants evidentiary sanctions under Rule 37.  (Mot. p. 1).  Defendant asks the

2    Court to "exclude all evidence of late-disclosed medical records and all testimony derived

3    therefrom, including her medical expert Dr. Shulman's testimony about pancreatitis."  (Reply p.

4    4).

5    **Governing Legal Standard**

6          Even before receiving any request for discovery, Rule 26(a) of the Federal Rules of Civil

7    Procedure requires a party to disclose: (1) the identity of each individual likely to have

8    discoverable information and the subject of that information; and (2) copies or a description of

9    documents that the disclosing party may use to support its claims or defenses. *See* Fed. R. Civ. P.

10   26(a)(1)(A)(i)-(ii).  Where a party discovers that any initial disclosure under Rule 26(a) is

11   incomplete or incorrect, that party has an ongoing duty to supplement or correct its disclosures.

12   *See* Fed. R. Civ. P. 26(e)(1)(A).

13         Under Rule 37(c), a party that "fails to provide information or identify a witness as

14   required by Rule 26(a) or (e)" may not "use that information or witness to supply evidence ... at a

15   trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). *See*

16   *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule

17   37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information

18   required to be disclosed by Rule 26(a) that is not properly disclosed."). "The Advisory Committee

19   Notes describe it as a 'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for

20   disclosure of material....'"  *Id.* (quoting Fed. R. Civ . P. 37 advisory committee's note (1993)).

21   "Among the factors that may properly guide a district court in determining whether a violation of

22   a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against

23   whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood

24   of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the

25   evidence." *Lanard Toys Ltd. v. Novelty, Inc*., 375 Fed. Appx. 705, 713 (9th Cir. 2010) (citing

26   *David v. Caterpillar, Inc*., 324 F.3d 851, 857 (7th Cir. 2003)). "The party facing sanctions bears

27   the burden of proving that its failure to disclose the required information was substantially

28   justified or harmless." *R & R Sails, Inc. v. Ins. Co. of Pa*., 673 F.3d 1240, 1246 (9th Cir. 2012).

1    Further, the sanction of evidence exclusion is not mandatory under Rule 37(c)(1). *See*

2    *Bonzani v. Shinseki*, No. 2:11-CV-0007-EFB, 2014 WL 66529, at *3 (E.D. Cal. Jan. 8, 2014)

3    (finding Rule 37(c)(1) exclusion sanctions are not mandatory, even when the insufficient

4    disclosures are not substantially justified or harmless). A court's decision to exclude evidence is

5    discretionary and the court is given "particularly wide latitude ... to issue sanctions under Rule

6    37(c)(1)." *Id*.

7    **Analysis**

8    Defendant seeks an order barring Plaintiff from using or introducing at trial three

9    categories of records and testimony based on Plaintiff's alleged discovery violations noted above.

10   The Court addresses each of these categories in turn.

11   **A. Identification of and Records from Centennial Hospital**

12   The parties agree that Plaintiff was seen at Centennial Hospital in October 2020 and

13   diagnosed with pancreatitis. The parties further agree that Plaintiff did not disclose Centennial in

14   her Rule 26 initial disclosures (February 2022) or in response to Defendant's interrogatories,

15   served in March 2022, requiring Plaintiff to identify her medical providers. Instead, Plaintiff first

16   disclosed Centennial to Defendant in an email communication between counsel for the parties on

17   August 7, 2023, in connection with and two days in advance of Plaintiff's scheduled deposition

18   (on August 9, 2023). *See* Mot., Ex. D; Op. p. 3.[2] This was approximately three weeks in advance

19   of the deadline to complete all non-expert discovery (August 29, 2023). Plaintiff did not produce

20   the Centennial records (bearing a print date of August 10, 2023) to Defendant until August 29,

21   2023.

22   Defendant argues that this type of "last minute" disclosure "on the eve of the fact

23   discovery cutoff" constitutes a violation of Plaintiff's Rule 26 disclosure obligations that justifies

24   the sanction of evidence exclusion under Rule 37. (Mot. p. 2; Reply p. 6). In opposition, Plaintiff

25   contends that she "produced all of her records as soon as she had them and identified all medical

26   providers as soon as she was able." (Opp. p. 2) (citing Doc. 107 ["Coyle Decl."] at ¶ 3). Plaintiff

27   further contends that her contraction of pancreatitis was not a surprise when disclosed in

28   _____

[2] Defendant incorrectly asserted in its moving papers that Centennial was first disclosed on August 16, 2023. *See* Mot. p. 3.

4

connection with the Centennial records because that diagnosis was identified in other records produced in her Rule 26 initial disclosures. *Id.* (citing Coyle Decl., Ex. A).  Moreover, Plaintiff argues that all of the pancreatitis-related records in her possession were provided to Defendant "well in advance of the October 10, 2023 rebuttal expert deadline and the November 7, 2023 expert discovery deadline." *Id.* at 4.

Notwithstanding that Plaintiff's identification of and production of records relating to a Centennial indisputably was delayed, Defendant is unable to assert that Plaintiff's provision of discovery relating to Centennial violated a Court-ordered discovery deadline.  Moreover, the Court finds the Defendant is unable to rebut Plaintiff's showing of harmlessness.  Thus, Defendant does not dispute Plaintiff's assertion that all of the pancreatitis-related records in her possession were provided to Defendant sufficiently in advance of the rebuttal expert disclosure and expert discovery deadlines that Defendant's expert had time to review, consider and address those records in his rebuttal report.  Indeed, Defendant acknowledges that after Plaintiff disclosed Centennial, Defendant independently obtained records from Centennial (in late-September 2023) and provided them to Defendant's expert in sufficient time for the expert to address them in his report.  (Mot. pp. 4-5).

Defendant argues that certain Centennial records it obtained independently seemingly identify an errant date (2013) for a procedure Plaintiff undertook, leading Plaintiff's expert during deposition when confronted with the possible anomaly to concede that understanding the significance of the 2013 date would require information from a Centennial witness.  *Id.* at 5. Separately, Defendant argues that the Centennial records it obtained directly from Centennial bear certain differences from the same records produced by Plaintiff, and that, because nonexpert discovery is closed, it is unable to explore the nature of these "discrepancies."  *Id.* at 8.  The Court has reviewed the alleged discrepancies and does not find they are sufficiently material to warrant reopening discovery given that both parties' experts have opined about the nature and possible source of the differences.

The Court has considered the four *Lanard Toys* factors (*supra*) and finds that Plaintiff's delayed disclosure of Centennial and records pertaining to her treatment at Centennial is

harmless.  Although Defendant has suffered some surprise and prejudice given that it received the Centennial records on the day nonexpert discovery closed, it was notified in advance of Plaintiff's deposition that Plaintiff had been treated at Centennial for pancreatitis, and, thus, had an opportunity to question Plaintiff about the diagnosis and procedures.  Defendant also received the Centennial records in time for its expert to address them in his reports.  Dispositive motions have not yet been filed, trial is not imminent, and Defendant has had the records long enough to fully evaluate and address them in any future phase of litigation.   As Defendant is unable to rebut Plaintiff's assertion that she produced the records as they reasonably became available, the Court also cannot find bad faith or willfulness in Plaintiff's disclosure.  *See, e.g., Holen v. Jozic*, No. C17-1147 JLR, 2018 WL 5761775, at *4-6 (W.D. Wash. Nov. 2, 2018) (belatedly disclosed expert report deemed harmless where it was produced sufficiently in advance of trial, party seeking sanctions was able to depose the expert, and the late disclosure did not delay the case); *Macias v. Perez*, No. 10cv973-MMA (BGS), 2011 WL 2669475, at *3 (S.D. Cal. July 7, 2011) (same).  Accord, *Percelle v. Pearson*, No. 12-cv-05343-TEH, 2016 WL 6427883, at *3 (N.D. Cal. Oct. 31, 2016) (chastising plaintiff for producing medical records after close of discovery, but finding disclosure harmless under Rule 37 where trial was not imminent and defendant possessed the documents with sufficient time to review and use them).

**B. Identification of and Records from Babylon Health**

The parties agree that Plaintiff was seen at Babylon Health in May 2022 and that she did not identify Babylon in her Rule 26 initial disclosures or any supplements thereto.  Similar to her delayed disclosure of Centennial, Plaintiff did not identify Babylon in any updated response to Defendant's interrogatories requiring Plaintiff to identify her medical providers.  Instead, Babylon was first disclosed to Defendant on the day nonexpert discovery closed (August 29, 2023) and Babylon records were not produced until September 22, 2023.

Defendant argues that this belated identification of Plaintiff's medical provider and production of records constitutes a violation of Plaintiff's Rule 26 disclosure obligations that justifies the sanction of evidence exclusion under Rule 37.  (Mot. p. 2; Reply p. 6).  Defendant notes that Plaintiff's expert (Dr. Shulman) referred to the Babylon records in his report dated

September 12, 2023 (Ex. C) – meaning Plaintiff had the records in her possession for at least 11 days prior to her production of the records to Defendant.  In opposition, similar to her argument relating to the delayed disclosure of Centennial records, Plaintiff asserts that the Babylon records were produced to Defendant more than two weeks in advance of the deadline for their use in rebuttal expert reports.

Defendant maintains that "[i]t seems likely that the Babylon record[s] would have affected (Defendant's expert witness's) opinions."  (Reply p. 8).  However, Defendant does not directly address Plaintiff's argument that, in fact, Defendant's expert could have reviewed and addressed the Babylon records in his rebuttal report because they were produced to Defendant more than two weeks prior to the deadline for disclosure of rebuttal reports.  Moreover, Defendant's assessment that the records could have affected its expert's opinions is mere speculation.  Defendant could have confirmed with its expert during the two months between its receipt of the Babylon records and the filing of its motion for sanctions whether those records would, in fact, have materially changed his opinions, and submitted a declaration to that effect in support of the present motion.  Defendant has not done so.

Defendant separately argues that Plaintiff gained a "tactical advantage" that prejudiced Defendant because Plaintiff's expert was able to address the undisclosed Babylon records in his expert report, whereas Defendant's expert did not have the benefit of the same records.  (Reply p. 8).  But, again, Defendant does not dispute that it received the Babylon records with sufficient time for its expert to fully address them in his supplemental report – which he authored more than two weeks after Plaintiff produced the records to Defendant.

Here, for the same reasons the Court concludes Plaintiff's belated identification of Centennial and production of its records is harmless, so, too, with Babylon and the Babylon records.  *See Holen*, 2018 WL 5761775, at *4-6; *Percelle*, 2016 WL 6427883, at *3; *Macias*, 2011 WL 2669475, at *3.  Given this harmlessness, the Court likewise concludes that the use of Babylon records by Plaintiff's expert (Dr. Shulman) in his report does not warrant the sanction of barring the expert from testifying at trial.

**C.  Identification of and Records From Ten Other Medical Providers**

Defendant also seeks sanctions due to Plaintiff's "last minute" disclosure of ten other medical providers and late production of those providers' documents weeks after the close of nonexpert discovery.  (Reply p. 5).  However, like the Centennial and Babylon records, Defendant does not directly respond to Plaintiff's charge of harmlessness given that undisputed fact that Defendant was in possession of the records with adequate time to share them with its expert and facilitate the expert's treatment of those records in his rebuttal report.

**Conclusion and Order**

For the foregoing reasons, it is HEREBY ORDERED, Defendant's motion for sanctions pursuant to Fed. R. Civ. P. 26 and 37 (Docs. 86, 87) is DENIED.

IT IS SO ORDERED.

Dated:   __January 17, 2024__                           _____

UNITED STATES MAGISTRATE JUDGE