1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  ASHLEIGH ANGELO, *et al.*, | Case No.: 1:21-cv-01609-JLT-CDB |
| 12       Plaintiffs, | PRETRIAL ORDER |
| 13       v. | Deadlines: |
| 14  THOMSON INTERNATIONAL,  INCORPORATED, *a California Corporation*, | Motions in Limine Filing:  **June 4, 2024**.  Oppositions to Motions in Limine:   **June 11, 2024** |
| 15 | Trial Submissions:  **June 18, 2024** |
| 16       Defendant. | Jury trial:  July 9, 2024, at 8:30 a.m., 5–10 days estimate |
| 17 | |

18      On May 20, 2024, the Court conducted a final pretrial conference.  David Coyle and Eric

19  Gruber appeared as counsel for plaintiff; Robert Sallander appeared as counsel for defendant.  Having

20  considered the parties' objections, the court issues this tentative pretrial order.

21      This case concerns the 2020 North American *Salmonella* Newport outbreak, associated with

22  Thomson International Incorporated's onions grown in the central and southern valleys of California.

23  (*See* FAC, Doc. 59.)  Plaintiffs are six individuals who contracted *Salmonella* infections after

24  consuming onions allegedly "produced and sourced by Defendant Thomson International[.]" (*Id.* at ¶

25  25.)[1]  Plaintiffs bring four causes of action against Defendant as a result of their infections: (1) strict

26  liability; (2) breach of express and implied warranties; (3) negligence; and (4) negligence *per se*.  (*Id.* at

27

28  [1] On May 6, 2024, Plaintiffs voluntarily dismissed eight of the individual plaintiffs pursuant to Rule 41(a)(1)(A)(2).  (Doc. 132.)

6–9.)  Plaintiffs request economic and non-economic damages, as well as past and future medical expenses.  (*Id.* at 9.)

**A.     JURISDICTION/ VENUE**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 based on diversity jurisdiction.  In addition, Defendant resides in Bakersfield, California (Doc. 1 at ¶ 2).  Accordingly, venue is proper in the United States District Court for the Eastern District of California.  *See* 28 U.S.C. § 1391(b)(1).

**B.     JURY TRIAL**

The parties demanded a jury trial in this matter.  (Doc. 59 at 1; Doc. 134 at 2.)  The jury trial will consist of eight jurors.

**C.     UNDISPUTED FACTS**

The parties have not provided a statement of undisputed facts.

**D.     DISPUTED FACTS**

1.   Plaintiffs' Statement of Disputed Facts

a.   Health department officials conducted an investigation of an outbreak of genetically indistinguishable *Salmonella* Newport infections and determined that the subject outbreak was linked to Defendant's adulterated onions.

b.   During the investigation, a total of 11 environmental subsamples collected near Thomson's growing fields tested positive for *Salmonella* Newport.

c.   Thomson placed the allegedly adulterated onions into the stream of commerce.

d.   Health department traceback analyses concluded that Plaintiffs more likely than not consumed contaminated onions produced, sold, and distributed by Thomson.

e.   Health department officials were not able to test any of the onions that allegedly caused the subject outbreak because they had already been consumed by outbreak victims.

f.   Plaintiff Ashleigh Angelo's illness described in Plaintiffs' Complaint was confirmed to be caused by *Salmonella* Newport.

2

g. Plaintiff Ashleigh Angelo's *Salmonella* infection was confirmed to match the subject outbreak strain by whole genome sequencing.

h. Plaintiff Ashleigh Angelo was hospitalized from July 23, 2020 – July 25, 2020, with *Salmonella* Newport. She was admitted to the hospital again on August 13, 2020 – August 16, 2020, with rectal bleeding related to her *Salmonella* Newport infection.

i. Plaintiff Amanda Erickson's illness described in Plaintiffs' Complaint was confirmed to be caused by *Salmonella* Newport.

j. Plaintiff Amanda Erickson's *Salmonella* infection was confirmed to match the subject outbreak strain by whole genome sequencing.

k. Plaintiff Amanda Erickson was seen at Kalispell Regional Medical Center Emergency Room on July 16, 2020 with cramping, diarrhea and vomiting related to her *Salmonella* Newport infection. She was seen two days later on July 18, 2020 at Kalispell Urgent Care Center with the same symptoms related to her *Salmonella* Newport infection.

l. Plaintiff John Kahlie's illness described in Plaintiffs' Complaint was confirmed to be caused by *Salmonella* Newport.

m. Plaintiff John Kahlie's *Salmonella* infection was confirmed to match the subject outbreak strain by whole genome sequencing.

n. Plaintiff John Kahlie went to St Charles Hospital on August 11, 2020 with complaints of diarrhea, nausea and vomiting related to his *Salmonella* Newport infection.

o. Plaintiff Jose Mena's illness described in Plaintiffs' Complaint was confirmed to be caused by *Salmonella* Newport.

p. Plaintiff Jose Mena's *Salmonella* infection was confirmed to match the subject outbreak strain by whole genome sequencing.

q. Plaintiff Jose Mena went to McKenzie County Urgent Care on July 12, 2020 with

3

episodes of diarrhea, headaches and chills related to his *Salmonella* Newport infection. He returned on July 13, 2020 with unimproved symptoms and high fever related to his *Salmonella* Newport infection and discharged home on July 14, 2020.

r.  Plaintiff Linda Mitchell's illness described in Plaintiffs' Complaint was confirmed to be caused by *Salmonella* Newport.

s.  Plaintiff Linda Mitchell's *Salmonella* infection was confirmed to match the subject outbreak strain by whole genome sequencing.

t.  Plaintiff Linda Mitchell was evaluated at the Bryn Mawr Hospital Emergency Room on July 21, 2020, and was admitted to the hospital until July 27, 2020 in connection with her *Salmonella* Newport illness. Plaintiff Mitchell continued to test positive for *Salmonella* on August 26, 2020, and September 8, 2020. She was later diagnosed with arthritis requiring anti-inflammatory therapy.

u.  Plaintiff James Thompson's illness described in Plaintiffs' Complaint was confirmed to be caused by *Salmonella* Newport.

v.  Plaintiff James Thompson's *Salmonella* infection was confirmed to match the subject outbreak strain by whole genome sequencing.

w.  Plaintiff James Thompson was hospitalized at Legacy Salmon Creek Progressive Care from July 14, 2020 – July 20, 2020, with nausea, vomiting, and diarrhea in connection with his *Salmonella* Newport illness. On July 28, 2020, Mr. Thompson still complained of right abdominal pain. On August 13, 2020, he was diagnosed with a small abdominal hernia attributed to severe vomiting from his recent *Salmonella* infection.

2.  Defendant's Statement of Disputed Facts[2]

a.  Thomson International, Inc. is a family-owned business that grows red onions, among other varieties, in Bakersfield and Holtville, California.

---

[2] It appears that the defendant may have intended this section to constitute "undisputed" facts.

b. On July 10, 2020, the U.S. Centers for Disease Control and Prevention ("CDC") identified an outbreak of *Salmonella* Newport infections, but had not identified a specific food, grocery store, or restaurant as the source of the outbreak.

c. The FDA contacted Thomson as part of its investigation.

d. The outbreak was assigned the identity, CDC ID 2007MLJJP-1.

e. The FDA investigation of Thomson's farms and packing houses took place from August 3 to approximately September 18, 2020, as part of its ongoing investigation, the FDA, with the assistance of the California Department of Public Health, sent a team of inspectors to Thomson's packing facility and growing fields.

f. They gathered nearly 2,000 samples for laboratory testing.

g. The outbreak strain of *Salmonella* Newport has not been isolated in any TII onion, any product made with TII onions, in TII's packing facility, on its equipment, or at TII's growing fields.

h. No TII onion has tested positive for the outbreak strain of *Salmonella* Newport.

i. The FDA stated that "the *Salmonella* Newport outbreak strain (specific whole genome sequence [WGS]) was not identified in any of the nearly 2,000 subsamples tested."

j. The FDA stated that "a conclusive root cause of the outbreak could not be identified."

k. WGS is the subtyping of bacterial isolate that are submitted by culture- positive ill persons, and is performed within the PulseNet molecular laboratory surveillance system headed by the CDC.

l. WGS is performed by sequencing the DNA or "genomic makeup" of each *Salmonella* isolate. Genomes from culture-positive patients, food, and environmental isolates are compared through sequencing to determine whether they are genetically similar.

m. The first step in epidemiological investigations is to contact caregivers or case

5

patients with the outbreak strain without delay in order to gather information about food and beverages consumed in the several days before the case patient fell ill.

n. In the 2020 *Salmonella* Newport outbreak, early case patient interviews indicated Mexican-style foods, with several subclusters associated with Mexican-style restaurants identified, prompting supplementary interviews and questionnaires focusing on Mexican-style food and food ingredients.

o. Other exposures assessed were white and yellow onions, red, round tomatoes, Roma tomatoes, green peppers, hot peppers, cilantro, and ground beef, which were identified in 3, 4, 4, 2, 4, 3, 6, and 5 subclusters, respectively.

p. Most of Thomson's customers were wholesalers that place orders with TII by email or telephone. Thomson did not sell its onions directly to retailers outside of Southern California.

q. No outbreak clusters were in Southern California.

r. Thomson did not deliver or ship the vast majority of its produce to customers.

s. Purchasers made their own arrangements to pick up and transport produce from Thomson's Bakersfield, CA facility.

t. Thomson provided its produce to these purchasers FOB.

u. Though unnecessary for Thomson's purposes, customers may have sometimes listed a "ship to" address on purchase orders.

v. Thomson keeps records of any "ship to" addresses provided by its customers.

w. Neither HelloFresh nor EveryPlate was a TII's customer in 2020.

x. TII did not arrange transportation for shipment of TII product to HelloFresh or EveryPlate in 2020.

y. EveryPlate did not purchase onions from Thomson.

z. EveryPlate had 32 suppliers of onions for its meal kit products in 2020, none of

which was Thomson.

aa. None of EveryPlate's suppliers for meal kits in 2020 was HelloFresh.

bb. EveryPlate submitted purchase orders to its suppliers for a given week.

cc. The onions were shipped by the suppliers to EveryPlate's various distribution centers.

dd. Subway was not a TII customer in 2020.

ee. Plaintiff James Thompson claimed he became ill after eating at Los Jalepenos Restaurant, Vancouver, WA on 7/10/2020.

ff. TII did not ship onions to Los Jalepenos Restaurant.

gg. Plaintiff John Kahlie testified that he ate a sandwich with onions from the Portland Sub Company inside Circle K.

hh. TII did not ship onions to Portland Sub Company or Circle K.

ii. Plaintiff Jose Mena of Watford City, ND testified he didn't know if he had onions on a sandwich from Subway on July 2, 2020, or from stores he shopped at between July 6 to July 11, 2020.

jj. Bank records show Mr. Mena made purchases at Albertsons on 7/2/2020; Kum & Go, Ndgsw Jack & Jill on 07/03/2020; Subway on July 6, 2020; Los Saguaros Mexican Restaurant on July 6, 2020; Wise Foods, Sams Club, and Save as You Go; Kum & Go, Oahu Bismarck, Cash Wise Foods, Save As You Go on July 7, 2020; El Paricutin Mexican on July 8, 2020; Burger King, Kum & Go, Family Dollar, Save As You Go, on July 9, 2020; Latte, Holiday Stations, Tomate Mexican, on July 10, 2020; and Save As You Go on July 10, 2020.

kk. Plaintiff Amanda Erickson of West Glacier, MT testified she bought onions at Walmart in Kalispell, MT on June 18, 2020.

ll. Erickson testified she did not eat the onions she purchased in June until July 15, 2020.

mm. Plaintiff Linda Mitchell of Wayne, PA testified she purchased food from the

7

Great American Pub on July 20, 2020.

nn. TII did not supply onions to the Great American Pub.

oo. Plaintiff Ashleigh Angelo purchased a yellow onion from Walmart, located at 540 Marks St, Henderson, NV 89014 on July 3, 2020.

pp. Plaintiff Angelo did not know the brand of the onion, or who grew the onion or who supplied the onion to Walmart, or who transported the onion to Walmart.

**E.    DISPUTED LEGAL ISSUES**

1. <u>Plaintiffs' Legal Issues</u>

Plaintiffs' claims arise from the following legal theories: strict products liability, breach of express warranty, breach of implied warranties of merchantability and fitness for intended use, and negligence, as well as negligence per se claims arising from Defendant Thomson International's violations of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 301, et seq.) and California Health & Safety Code (Division 104 et seq.).  Plaintiffs seek compensatory damages for past and future medical, lost income, and general damages including pain, suffering, mental and physical discomfort, emotional distress, loss of enjoyment of life, diminished quality of life, and other non-economic damages.

2. <u>Defendant's Legal Issues</u>

Defendant responds to Plaintiffs' legal issues with the following:

- Strict Liability:  Plaintiffs must prove they consumed an onion that was supplied, packaged, distributed, or sold by Defendant Thomson International.  No Plaintiff has been able to identify the grower of the onion they allegedly consumed.

- Plaintiffs must further prove the onion Plaintiffs allegedly consumed was contaminated with *Salmonella* while in Defendant Thomson International's custody and control—not later in the chain of distribution.  None of the onions allegedly consumed by Plaintiffs were tested for *Salmonella.*  After extensive investigation and sampling by the FDA and investigators from California, Oregon, Washington, Utah, and other states of onions grown by Thomson, no contaminated onions were located.  Plaintiffs must

8

prove the onion allegedly consumed by Plaintiffs caused harm to Plaintiffs.

- Plaintiffs claim to have suffered gastrointestinal issues including diarrhea and nausea. Some plaintiffs claim additional medical complications. The duration and severity of each plaintiff's alleged illness varies by plaintiff.

- Breach of Warranty: Under this cause of action Plaintiffs have asserted the existence of express and implied warranties. There is no evidence of any communication from Thomson International to any plaintiff and, hence, no express warranty. The implied warranty of merchantability requires Plaintiffs to prove they consumed an onion grown by Thomson International, that was contaminated while in Thomson's possession, that caused them harm. In this way, the breach of warranty cause of action is duplicative of the strict liability cause of action.

- Negligence/Negligence *Per Se*: The Negligence and Negligence *Per Se* causes of action both rest on duties allegedly imposed by statute. Plaintiffs have not identified the precise statutory language they allege Thomson International violated, but have generally referred to federal, state, and local statutes, laws regulations, safety codes, and provisions pertaining to the manufacture, distribution, storage, and sale of their food product, the Federal Food, Drug, and Cosmetic Act and the California Health & Safety Code. To prevail under these causes of action, like in the prior two causes of action discussed, Plaintiffs must prove they consumed Thomson International grown onions, that were contaminated with *Salmonella* while in Thomson International's possession, that harmed Plaintiffs.

- Thomson International Inc. denies that any onion it grew or placed in the stream of commerce in 2020 was contaminated while in Thomson's possession; and affirmatively asserts that, if any Plaintiff proves she or he ate a Thomson grown onion that is proven to be contaminated, the contamination occurred after the onion left Thomson's possession, custody, and control. In addition, Thomson asserts affirmative defenses as follows:

- Uncertain Damages:  Plaintiffs' losses, if any, are speculative and/or uncertain, and therefore, not compensable.

- Equitable Indemnity/Comparative Contribution:  In the event Defendant is held liable, Defendant is entitled to a proportionate contribution of the total liability from persons, firms, corporations or entities other than Defendant in accordance with eh principles of equitable indemnity and contribution.

- Unforeseeable and Unreasonable Acts of Others:  Plaintiffs' injuries, losses, or damages, if any, were caused solely by the unforeseeable and unreasonable abuse, misuse, or alteration of the product, by persons, parties or entities other than Defendant, and not by any act or omissions for which Defendant may be held legally or equitably responsible.

- Modification of the Onions:  Plaintiffs' claims against Defendant are barred, in whole or in part, by the alteration, modification, destruction, misuse, and/or abuse of the onions after leaving Defendant's possession and control.

- Lack of Control:  Plaintiffs' claims against Defendant are barred, in whole or in part, by the lack of notice, lack of access, and lack of possession and control on the part of Defendant.

- Compliance with Statutes:  Defendant exercised reasonable care, acted in accordance with or exceeded all applicable municipal, city, state and federal statutory, regulatory and common law requirements, regulations, codes and standards.

- Result of Genetic Factors:  Plaintiffs' injuries, symptoms, or problems, if any, were the result of genetic and environmental and/or sociological factors over which Defendant had no control and had no duty to control.

- Acts or Omissions of Other Parties:  The injuries and damages of which Plaintiff complains were caused, in whole or in part, by the acts or omissions of individuals or entities other than Defendant and over whom Defendant had no control and no right of control.

**F.     DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE**

Both parties intend to file motions in limine regarding the evidence to be used at trial.  The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial.  "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *Jonasson v. Lutheran Child and Family Services*, 115 F. 3d 436, 440 (7th Cir. 1997).  The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Id*. The court does not encourage the filing of motions in limine unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial.

**In advance of filing any motion in limine, counsel SHALL meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine.  Along with their motions in limine, the parties SHALL file a certification demonstrating counsel have in good faith met and conferred and attempted to resolve the dispute.  Failure to provide the certification may result in the Court refusing to entertain the motion.**

Any motions in limine must be filed with the Court no later than **June 4, 2024**.  The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.  Any opposition to the motion must be served on the other party, and filed with the Court no later than **June 11, 2024, with any replies due** no later than **June 14, 2024**.  Upon receipt of any opposition briefs, the court will notify the parties if it will hear argument on any motions in limine.

**1.     Plaintiffs:**

Plaintiffs represent that they will contest the admissibility of the mental health records of Plaintiff Ashleigh Angelo and any references to Plaintiff Linda Mitchell's history with alcohol.  They state that such information should be excluded under Rules 401 and 403 of the Federal Rules of Evidence as this information is not relevant and is more prejudicial than probative.

Plaintiffs also state that Defendant is requiring Plaintiffs to call custodial and foundation

11

witnesses for all records and bills in this matter and refuses to stipulate to the admissibility of any evidence.

### 2. **Defendant:**

Thomson intends to file motions *in limine* to exclude the following categories of evidence:

1. Recalls of Thomson onions, including recalls by purchasers of Thomson onions (FRE 408);

2. FDA Investigation Report: Factors Potentially Contributing to the Contamination of Red Onions Implicated in the Summer 2020 Outbreak of *Salmonella* Newport, and other evidence based on its contents;

1. Expert Reports that Parrot Hearsay, including Dr. Shulman's Report Sections regarding Amanda Ericksen, John Kahlie, Jose Mena, and James Thompson, and Plaintiffs' liability experts;

4. Plaintiffs' Medical Records, and Plaintiffs' testimony that they had *Salmonella*, that they had the Outbreak Strain, and that they were sickened by Thomson onions;

5. All government reports tracing the *Salmonella* Newport outbreak to Thomson's onions, including but not limited to the CORE Network Incident Summary Report and Canadian Government reports;

6. All "line lists" and other evidence that any plaintiff had the "outbreak strain" of *Salmonella* Newport (FRE 702, 703, Daubert).

In addition to the grounds specifically stated above, these motions will be made on the ground that the evidence is hearsay not subject to any exception, is not relevant, and is inadmissible under FRE 403.

### G. SPECIAL FACTUAL INFORMATION

1. General Nature of Accident (E.D. Cal. L.R. 281(b)(6)(iv)(A)):

   a. This case arises out of a 2020 outbreak of *Salmonella* Newport that various public health authorities linked to Defendant's onions. The outbreak sickened individuals in 48 states. Plaintiffs are all individuals that allege that they were exposed to Defendant's contaminated onions and developed *Salmonella* Newport illnesses.

1   Testimonial and documentary evidence establishes that Defendant failed to follow

2   proper industry standards to prevent its products from becoming contaminated.

3   Plaintiffs assert claims of strict products liability, breach of express warranty,

4   breach of implied warranties of merchantability and fitness for intended use, and

5   negligence, as well as negligence per se claims arising from Defendant Thomson's

6   violations of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 301, et seq.)

7   and California Health & Safety Code (Division 104 et seq.) in connection with

8   Thomson's production and sale of onions contaminated with *Salmonella* Newport.

9   These claims arise from *Salmonella* infections each Plaintiff sustained as a result of

10  consuming Defendant's contaminated onions.  Because this matter involves product

11  liability claims, strict liability applies.  The doctrine of res ipsa loquitur does not

12  apply, however.

13  2.  <u>Specific Information Regarding Each Plaintiff (E.D. Cal. L.R. 281(b)(6)(iv)(B)):</u>

14      a.  Plaintiff Ashleigh Angelo is 27 years old.  She sustained a *Salmonella* Newport

15          illness and alleged that she developed autoimmune pancreatitis and active colitis.

16          Ms. Angelo's pancreatitis is likely to exist for years.  She has suffered and

17          continues to suffer debilitating injuries and damages which will require on-going

18          medical care.  Ms. Angelo was hospitalized from July 23, 2020 to July 25, 2020 and

19          readmitted from August 13, 2020 to August 16, 2020 with rectal bleeding.  Ms.

20          Angelo's medical expenses total $179,942.83.  Ms. Angelo has a total of $322 in

21          wage loss.  Ms. Angelo made $11.50 per hour and missed a total of 28 hours. Ms.

22          Angelo worked from home and worked even though she was ill (vomiting, diarrhea,

23          nausea and abdominal pian).  Ms. Angelo suffered pain and suffering caused by her

24          *Salmonella* illness.  General damages for past and future pain and suffering, mental

25          and physical discomfort, emotional distress, loss of enjoyment of life, diminishment

26          in quality of life, and other similar damages, to be determined by the jury.

27      b.  Plaintiff Amanda Erickson is 41 years old.  She sustained a *Salmonella* Newport

28          illness.  Ms. Erickson was seen at the Emergency Room on July 16, 2020 and

Urgent Care on July 18, 2020.  Mr. Ericksons' medical expenses total $10,614.04.
Plaintiff had to go stay at a hotel during her illness at a cost of $514.24. Ms.
Erickson made $17 per hour.  In addition, she was paid $170 a day for being a
manager. Ms. Erickson missed a total of five full days of work (40 hours), putting
her wage loss at $1,530.00.  General damages for past and future pain and suffering,
mental and physical discomfort, emotional distress, loss of enjoyment of life,
diminishment in quality of life, and other similar damages, to be determined by the
jury.

c.  Plaintiff John Kahlie is 56 years old.  He sustained a *Salmonella* Newport illness.
Mr. Kahlie spent 1 day in the hospital on August 11, 2020.  Mr. Kahlie's medical
expenses total 3,508.57.   Mr. Kahlie missed 11 days of work and lost out on
commissions for several vehicles he would have sold as a salesman, and eventually
lost his job.  In the two months leading up to his illness, Mr. Kahlie's average
monthly gross pay was $5,958.89.  For the month he was sick, his gross pay was
$2,206.40.  Thus, he lost out on $3,752.49 in pay.  General damages for past and
future pain and suffering, mental and physical discomfort, emotional distress, loss
of enjoyment of life, diminishment in quality of life, and other similar damages, to
be determined by the jury.

d.  Plaintiff Jose Mena is 49 years old. He sustained a *Salmonella* Newport illness.  Mr.
Mena went to urgent care on July 12, 2020 and returned on July 13, 2020 and was
discharged the next day.   Mr. Mena's medical expenses total $18,973.56.  Mr.
Mena missed 50 hours of work.  He made $30.94 per hour.  His wage loss total is
$1,547.00.  General damages for past and future pain and suffering, mental and
physical discomfort, emotional distress, loss of enjoyment of life, diminishment in
quality of life, and other similar damages, to be determined by the jury.

e.  Plaintiff Linda Mitchell is 67 years old.  She sustained a *Salmonella* Newport
illness.  Ms. Mitchell was hospitalized from July 21, 2020 to July 27, 2020.
Months later she was still having abnormal unformed stools and testing positive for

*Salmonella*.  Ms. Mitchell alleges that she developed reactive arthritis from her *Salmonella* illness.  Ms. Mitchell's reactive arthritis is likely to be persistent for years to come.  Mrs. Mitchells' medical expenses are $80,798.50.  General damages for past and future pain and suffering, mental and physical discomfort, emotional distress, loss of enjoyment of life, diminishment in quality of life, and other similar damages, to be determined by the jury.

      f.   Plaintiff James Thompson is 59 years old. He sustained a *Salmonella* Newport illness.  Mr. Thompson was hospitalized from July 14, 2020 to July 20, 2020.  On July 28, 2020, Mr. Thompson still complained of right abdominal pain.  On August 13, 2020, he was diagnosed with a small abdominal hernia attributed to severe vomiting from his recent *Salmonella* infection.  Mr. Thompson still continues to have abdominal pain. Mr. Thompsons' medical expenses total $50,591.74.  Mr. Thompson missed a total of 20 days at work.  His average wage was $500 per work day. Mr. Thompson's wage loss totals $10,000.00.  General damages for past and future pain and suffering, mental and physical discomfort, emotional distress, loss of enjoyment of life, diminishment in quality of life, and other similar damages, to be determined by the jury.

**H.**    **RELIEF SOUGHT**

    1.  **Plaintiffs**

Plaintiffs request compensatory and general damages for the following individuals:

    a.  Ashleigh Angelo

| | |
|---|---|
| Medical Expenses | $179,942.83 |
| Lost Wages | $    322.00 |
| General damages | To be determined by the jury |

    b.  Amanda Erickson

| | |
|---|---|
| Medical Expenses | $10,614.04 |
| Lost Wages | $ 1,530.00 |
| Hotel expenses | $   514.24 |

|  |  |  |
|---|---|---|
|  | General damages | To be determined by the jury |
| c. | John Kahlie | |
|  | Medical Expenses | $3,508.57 |
|  | Lost Wages | $3,752.49 |
|  | General damages | To be determined by the jury |
| d. | Jose Mena | |
|  | Medical Expenses | $18,973.56 |
|  | Lost Wages | $1,547.00 |
|  | General damages | To be determined by the jury |
| e. | Linda Mitchell | |
|  | Medical Expenses | $80,798.50 |
|  | General damages | To be determined by the jury |
| f. | James Thomspon | |
|  | Medical Expenses | $50,591.74 |
|  | Lost Wages | $10,000.00 |
|  | General damages | To be determined by the jury |

2. **Defendant**

Defendant has not made a specific request for relief in the parties' Joint Pretrial Statement.

**I.    ABANDONED ISSUES**

The following affirmative defenses have been abandoned by Defendant Thomson International:  Failure to State a Claim; Failure to Mitigate; Performance; No Warranties; and Failure to Join Necessary Parties.

**J.    WITNESSES**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

1          **1.         <u>Plaintiffs' Witnesses</u>**

2          •     John Besser (expert)

3          •     Peter Gerner Smidt, M.D. (expert)

4          •     Frank Yiannas, MPH (expert)

5          •     Kevin Elfering (expert)

6          •     Brandon Adcock, California Department of Public Health

7          •     Jack Thomson

8          •     Neftali Hernandez

9          •     David Marquez

10         •     Nancy Lugo

11         •     Nancy Anspach

12         •     Lauren Edwards, Michigan Department of Agriculture and Rural Development

13         •     Trevor Flint

14         •     Sanford T. Shulman, M.D.

15         •     Ernest Julian, Ph.D.

16         •     Ashleigh Angelo

17         •     Amanda Erickson

18         •     John Kahlie

19         •     Jose Mena

20         •     Linda Mitchell

21         •     James Thompson

22         •     Any witnesses identified by Defendant

23         •     Custodial witnesses to the extent necessary to establish authenticity, foundation, etc.

24         •     Any witness required for rebuttal, impeachment, and/or rehabilitation

25         •     Alexandra Lozo

26         •     Christopher Hanchett

27         •     Ryan Kahlie

28

17

- Hilda Mena
- Brandon Mitchell
- Kristina Guver
- Claudette Thompson

**2.    Defendant's Witnesses**

- Jack Thomson
- Elaine Thomson
- Nancy Anspach
- Nancy Lugo
- Shantee Bonilla
- Neftali Hernandez
- David Marquez
- Chris Solorio
- Graciela Adame
- Alvaro Soto
- Hilda Moen
- Dr. Martin Wiedmann, Ph.D. (expert)
- Melvin Kramer, Ph.D., M.P.H. (expert)
- Daniel Coto, M.P.H., R.E.H.S. (expert)
- Stephen Blackwell, M.S., R.E.H.S. (expert)
- Jonathan Ellis, M.D., F.A.C.P., Q.M.E. (expert)
- Daniel Wallace, M.D., F.A.C.P., M.A.C.R. (expert)

2.    **The court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria**:

    a.    The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

18

b.     The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

3.     Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so the court may consider whether the witnesses shall be permitted to testify at trial.  The witnesses will not be permitted unless:

a.   The witness could not reasonably have been discovered prior to the discovery cutoff;

b.   The court and opposing parties were promptly notified upon discovery of the witness;

c.    If time permitted, the party proffered the witness for deposition; and

d.   If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

## K.     EXHIBITS, SCHEDULES AND SUMMARIES

Plaintiffs' Exhibits are those listed in the Plaintiffs' Exhibit List, as set forth in the parties' Joint Pretrial Statement.  (Doc. 134 at 19–21.)  The Court incorporates Plaintiffs' Exhibit List by reference and will refer to them as "Attachment A" to this Order.

Defendant's Exhibit List are those listed in Exhibit C to the parties' Joint Pretrial Statement, as set forth in the parties' Joint Pretrial Statement.  (Doc. 134 at 21; Ex. C, Doc. 134.)  The Court incorporates Defendant's Exhibit List by reference and will refer to them as "Attachment B" to this Order.

NO EXHIBIT, OTHER THAN THOSE LISTED IN ATTACHMENTS A-C, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

1.     **For a party to use an undisclosed exhibit for any purpose, they must meet the following criteria**:

a.   The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

b.   The exhibit was discovered after the issuance of this order and the proffering party

makes the showing required in paragraph 2, below.

2.      Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits so that the court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

    a.   The exhibits could not reasonably have been discovered earlier;

    b.   The court and the opposing parties were promptly informed of their existence; and

    c.   The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

The parties must exchange exhibits no later than **June 11, 2024.**  On or before **June 18, 2024**, counsel **SHALL** meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examine each other's exhibits.  Any exhibits not previously disclosed in discovery **SHALL** be provided via e-mail or overnight delivery so that it is received by the above exhibit exchange deadline.

1.      At the exhibit conference, counsel will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiffs' exhibits and one listing Defendant's exhibits.  In advance of the conference, counsel must have a complete set of their proposed exhibits to be able to fully discuss whether evidentiary objections exist.  <u>Thus, any exhibit not previously provided in discovery **SHALL** be provided at least five court days in advance of the exhibit conference.</u>

2.      At the conference, counsel shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence.  These exhibits **SHALL** be marked as joint exhibits and numbered as directed above.  Joint exhibits **will** be admitted into evidence upon introduction and motion of a party, without further foundation.

All joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g., JT/1, JT/2, etc.).  Plaintiffs' exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g., PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g., DX501, DX502, etc.). The parties SHALL number each page of

any exhibit exceeding one page in length (e.g., PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any document is offered that is not fully legible, the Court may exclude it from evidence.

Each joint exhibit binder shall contain an index which is placed in the binder before the exhibits. The index shall consist of a column for the exhibit number, one for a description of the exhibit and one column entitled "Admitted in Evidence" (as shown in the example below).

**INDEX OF JOINT EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE |
|---|---|---|
|  |  |  |

3.      As to any exhibit which is not a joint exhibit but to which there is no objection to its introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be indexed as such on the index of the offering party.   Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

4.      Each exhibit binder shall contain an index which is placed in the binder before the exhibits.   Each index shall consist of the exhibit number, the description of the exhibit and the three columns as shown in the example below.

**INDEX OF EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OBJECTION OTHER |
|---|---|---|---|---|
|  |  |  |  |  |

5.      On the index, as to exhibits to which the only objection is a lack of foundation, counsel will place a mark under the column heading entitled "Objection Foundation."

6.      On the index, as to exhibits to which there are objections to admissibility that are not based solely on a lack of foundation, counsel will place a mark under the column heading entitled "Other Objections."

7.      As to each exhibit which is not objected to in the index, it shall be marked and received

21

into evidence and will require no further foundation.

After the exhibit conference, Plaintiff and counsel for the defendants **SHALL** develop four complete, legible sets of exhibits.  The parties **SHALL** deliver three sets of their exhibit binders to the Courtroom Clerk and provide one set to their opponent, no later than 4:00 p.m., on **July 2, 2024**. Counsel **SHALL** determine which of them will also provide three sets of the joint exhibits to the Courtroom Clerk.

8.    The Parties **SHALL** number each page of any exhibit exceeding one page in length.

## L.    POST-TRIAL EXHIBIT RETENTION

Counsel who introduced exhibits at trial **SHALL** retrieve the original exhibits from the courtroom deputy following the verdict in the case. The parties' counsel **SHALL** retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted.

## M.    DISCOVERY DOCUMENTS

The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial. NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

### 1.    Plaintiffs' Documents

Plaintiffs reserve the right to use any and all portions of depositions, answers to interrogatories, and responses to requests for admission for impeachment and/or rehabilitation purposes.

### 2.    Defendant's Documents

Defendant intends on proffering at trial:

a.   The Responses to Interrogatories, Set One, answers Nos. 1–3, 12, & 14 and the Responses to Document Production, Set One, Nos. 2 & 11 for:  Ashleigh Angelo, Linda Mitchell, Amanda Erickson, Jose Mena, James Thompson, and John Kahlie;

b.   Defendant's Responses to Interrogatories, Set One of Plaintiff Ashleigh Angelo Nos. 1–10;

c. Defendant's Responses to Request for Production of Documents, Set One of Plaintiff Ashleigh Angelo Nos. 1, 3, 8–45, 48–59, 61

d. Defendant's Responses to Request for Admissions of Plaintiffs Ashleigh Angelo, Amanda Erickson, James Thompson, Jose Mena, John Kahlie, Linda Mitchell, Nos. 1–24;

e. Defendant's Responses to Request for Admissions, Set One of Plaintiffs Angelo, Kahlie, Erickson, Mena, Mitchell, and Thompson Nos. 1–16; and

f. Defendant reserves the right to use deposition testimonies and discovery responses other than these listed above.

**N.    FURTHER DISCOVERY OR MOTIONS**

No further discovery is sought by either party.

**O.    STIPULATIONS**

The parties have not agreed upon any stipulations.

**P.    AMENDMENTS/ DISMISSALS**

Plaintiffs anticipate seeking leave at trial to amend the Complaint to assert a claim for punitive damages, based on the testimony and other evidence presented to the jury. Defendant contends that any new claims including punitive damages claims should be precluded at trial because plaintiffs failed to plead such claims in the complaint, failed to disclose such claims in Rule 26 initial disclosures, failed to include financial condition evidence of Thomson in exhibits, and because factual discovery closed last August. Defendant reserves the right to oppose new claims on additional grounds at trial.

Plaintiffs are reminded that any request to amend the complaint at trial must demonstrate the requirements of with Federal Rules of Civil Procedure 16 in addition to Rule 15.

**Q.    SETTLEMENT NEGOTIATIONS**

On May 9, 2024, all plaintiffs except for James Thompson made settlement demands which Defendant is considering at this time. At the pretrial conference, the defense made clear that the defendants are not interested in participating in a settlement conference. Consequently, **<u>no later than June 7, 2024</u>**, Defendant SHALL respond to each demand with an acceptance, a counteroffer, or a

1  rejection of the offer.

2  **R.    AGREED STATEMENT**

3     The parties have drafted the following neutral statement to use during jury selection:

4       In this case, plaintiffs all suffered from *Salmonella* illnesses during the summer

5       of 2020.  They contend their *Salmonella* infections were caused by exposure to

6       onions grown and sold by defendant Thomson.  Plaintiffs brought their case

7       against Thomson seeking damages for their alleged injuries.

8  **S.    SEPARATE TRIAL OF ISSUES**

9     There are no separate trial of issues at this time.

10 **T.    APPOINTMENT OF IMPARTIAL EXPERTS**

11    None requested.

12 **U.    ATTORNEYS' FEES**

13    The parties will seek an award of attorneys' fees as appropriate as a post-trial motion.

14 **V.    TRIAL DATE/ ESTIMATED LENGTH OF TRIAL**

15    Jury trial is set for **July 9, 2024**, at 8:30 a.m. before the Honorable Jennifer L. Thurston at the

16 Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, California.  Trial is expected to

17 last 5–10 days.

18 **W.    TRIAL PREPARATION AND SUBMISSIONS**

19    **1.    Trial Briefs**

20    The parties are relieved of their obligation under Local Rule 285 to file trial briefs.  If any

21 party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or

22 before **June 18, 2024.**

23    **2.    Jury Voir Dire**

24    The parties are required to file their proposed voir dire questions, in accordance with Local

25 Rule 162.1, on or before **June 21, 2024.**

26    **3.    Jury Instructions & Verdict Form**

27    The parties shall serve, via e-mail or fax, their proposed jury instructions in accordance with

28 Local Rule 163 and their proposed verdict form on one another no later than **June 4, 2024.** The parties

24

shall conduct a conference to address their proposed jury instructions and verdict form no later than **June 11, 2024**. At the conference, the parties **SHALL** attempt to reach agreement on jury instructions and verdict form for use at trial. The parties shall file all agreed-upon jury instructions and verdict form no later than **June 18, 2024**, and identify such as the agreed-upon jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail a copy of the joint jury instructions and joint verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

**If and only if, the parties after genuine, reasonable and good faith effort** cannot agree upon certain specific jury instructions and verdict form, the parties shall file their respective proposed (disputed) jury instructions and proposed (disputed) verdict form no later than **June 18, 2024,** and identify such as the disputed jury instructions and verdict forms.  At the same time, the parties **SHALL** lodge via e-mail, a copy of his/their own (disputed) jury instructions and proposed (disputed) verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible.  All jury instructions and verdict forms shall indicate the party submitting the instruction or verdict form (i.e., joint, plaintiffs', defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting the instruction.  Each instruction **SHALL** be numbered.

## X.     OBJECTIONS TO PRETRIAL ORDER

Within 14 days after the date of service of this order, the parties may file written objections to any of the provisions set forth in this order. The parties may file any replies to the objections within seven days. The objections shall clearly specify the requested modifications, corrections, additions or deletions. **If no objections are filed, the order will become final without further order of the Court.**

The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and Local Rule 283, this order shall control the subsequent course of this action and shall be modified only to prevent manifest injustice.

## Y.     MISCELLANEOUS MATTERS

Counsel are advised that the Court's trial schedule, absent other court conflicts, is as follows:

The first day of trial and until jury selection is completed, the trial day will begin at 8:30 a.m. and complete around 4:30 p.m. with an hour-long lunch break. Until the jury begins deliberating, the trial day will begin at 8:00 a.m. and complete at 1:30 p.m. with no lunch break, though the trial will break for two breaks during the trial day. Once the jury begins deliberating, the jury will set their own schedule.

Additionally, the Court notes that Plaintiffs represent that Plaintiff James Thompson is deaf and will need a sign language interpreter at trial. **The Court will provide the ASL interpreter**. Also, witnesses Neftali Hernandez and David Marquez will need Spanish language interpreters at trial. **The party proffering the witnesses are responsible for providing a Federally Certified Court Interpreter.** Plaintiffs request the ability to call witnesses through videoconferencing, *e.g.*, Zoom. Counsel **SHALL** confer and come to agreement as to this presentation of witnesses by Zoom.

**Z.    COMPLIANCE**

Strict compliance with this order and its requirements is mandatory. All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.


IT IS SO ORDERED.

Dated:    **May 21, 2024**

UNITED STATES DISTRICT JUDGE

1

Attachment A

2

The following is Plaintiffs' Exhibit List, as incorporated here:

3

| No. | BATES No. | Description |
|---|---|---|
| 1. | | Curriculum Vitae of John Besser |
| 2. | | Report of John Besser |
| 3. | | Curriculum Vitae of Peter Gerner Smidt |
| 4. | | Report of Peter Gerner Smidt |
| 5. | | Curriculum Vitae of Frank Yiannas |
| 6. | | Report of Frank Yiannas |
| 7. | | Curriculum Vitae of Kevin Elfering |
| 8. | | Reports of Kevin Elfering |
| 9. | TII0000032419– 32430 | Pre-Harvest Risk Assessment |
| 10. | TII000002758– 2760 | FDA Discussion Points from Thompson International Inspection Provided Orally by Commander Cindy White, FDA Compliance Officer |
| 11. | | Investigation Report: Factors Potentially Contributing to the Contamination of Red Onions Implicated in the Summer 2020 Outbreak of *Salmonella* Newport |
| 12. | | Declarations of Trevor Flint |
| 13. | | Bi-national Outbreak of *Salmonella* Newport infections linked to onions: the United States experience |
| 14. | THIHAN007897– 7901 | Michigan Department of Agriculture. 9:22 and Rural Development Joint After Action Report for Salmonella Newport in Onions Response |
| 15. | THIHAN007475– 7477 | Email Exchange from Lisa Joseph,. 36: 2 dated 8/11/20 |

27

| 16. | | Onions 52 Bill of Lading |
|---|---|---|
| 17. | TII000032174–32177 | Water Microbiological Testing 16 |
| 18. | TII0000032157–32159 | Water Source Inspections |
| 19. | TII000004439; TII000 21994; TII0002353; TII0002355; TII000 2358; TII00030990; TII00030991; TII00031004; TII00031005; TII00030999; TII00031000; TII00030995-30996; TII00031013; TII00031014; TII00031008; TII00031009; TII00027389; TII00022065 | Outgoing Shipments |
| 20. | TII00026958–26962 | Equipment Emails |

| 21. | TII000024870–24877 | Machinery Email |
|---|---|---|
| 22. | TII000003672–3677 | Master Sanitation SOP |
| 23. | TI00003655–3661 | Daily Cleaning Logs |
| 24. | TII0000032096–32127 | GAPS Table of Contents |
| 25. | TII000032174-32177 | Water Sampling SOP |
| 26. | TII000023362-23380 | Gladstone E and W 2020 Audit |
| 27. | TII000023393-23412 | Ranch 3 2020 Audit |
| 28. | TII000017599 | Water Analysis Test |
| 29. | TII000002758 | FDA Discussion Points |
| 30. | | FDA Memo |
| 31. | TII000020661–20662 | Costco Email to Shawn Hartley |

| 32. | TII000024896–24900 | Corrective Action Costco Document |
|---|---|---|
| 33. | [Ex. A to Pretrial Stmt.] | Plaintiffs' Medical Records broken down per plaintiff |
| 34. | [Ex. A to Pretrial Stmt.] | Plaintiffs' Billing Records, broken down per plaintiff |
| 35. | | Curriculum Vitae of Sanford T. Shulman, M.D. |
| 36. | | Report of Sanford T. Shulman, M.D. |
| 37. | | Curriculum Vitae of Ernest Julian, Ph.D. |
| 38. | | Report of Ernest Julian, Ph.D. |
| 39. | [Ex. A to Pretrial Stmt.] | Health Department records, broken down per plaintiff |
| 40. | [Ex. A to Pretrial Stmt.] | Plaintiffs' Wage Loss Documents, broken down per plaintiff |
| 41. | [Ex. A to Pretrial Stmt.] | Proof of purchase, broken down per plaintiff |
| 42. | [Ex. A to Pretrial Stmt.] | Plaintiff Erickson's hotel receipt |
| 43. | [Ex. B to Pretrial Stmt.] | Expert documents |
| 44. | | All exhibits to depositions |

Attachment B

The following is Defendant's Exhibit List, as incorporated here:

**Defense Exhibit 1: TII Food Safety Program**

| No. | Begin Bates | End Bates | Description |
|---|---|---|---|
| 1. | TII000003553 | TII000003569 | Food Safety Program |
| 2. | TII000003617 | TII000003645 | Food Defense Plan |
| 3. | TII000003743 | TII000003859 | Glad2e product use log for Kern county. |
| 4. | TII000005879 | TII000005921 | Food Safety Program |
| 5. | TII000017511 | TII000017520 | Primus Labs Packaging Audit Checklist. |
| 6. | TII000025666 | TII000025666 | Jose Perez PSA Grower Training Course. |
| 7. | TII000025667 | TII000025667 | David Marquez PSA Grower Training Course, 2019 |
| 8. | TII000025668 | TII000025668 | Nancy Anspach FSPCA Preventive Controls for Human Food, 02/08/2019. |
| 9. | TII000025669 | TII000025669 | Nancy Anspach PSA Grower Training Course. |
| 10. | TII000025670 | TII000025670 | Neftali Hernandez PSA Grower Training Course Certificate |
| 11. | TII000026686 | TII000026708 | Primus Final Audit |

| | | | |
|---|---|---|---|
| | | | Report for Brawley Onions located at Hilfiker Rd & Anderholt Rd & McCabe Rd, Brawley, CA |
| 12. | TII000032071 | TII000032071 | Food Safety Policy Statement |
| 13. | TII000032072 | TII000032072 | Food Safety Standards in Spanish. |
| 14. | TII000032073 | TII000032077 | GAP Food Safety Plan |
| 15. | TII000032078 | TII000032078 | TII Org Chart, Ranch Safety Team |
| 16. | TII000032080 | TII000032082 | General Training SOP. |
| 17. | TII000032090 | TII000032094 | Food Safety Plan, Master Document List. |
| 18. | TII000032241 | TII000032248 | Food Defense Plan |
| 19. | TII000032249 | TII000032251 | R3 Food Defense Assessment. |
| 20. | TII000032257 | TII000032261 | Personal Food Training SOP |
| 21. | TII000032324 | TII000032325 | Food Safety Plan - Farming Operations. |
| 22. | TII000032326 | TII000032327 | 2020 Food Safety Plan - Farming Operations. |
| 23. | TII000033949 | TII000033971 | Micro Testing SOPs with Michelson Lab Reports. |
| 24. | TII000034392 | TII000034447 | JJ Harvesting records. Food Safety Training certificates for Angel Nava, Manuel |

|  |  |  | Cano, Joel Ocampo, Antonio Carranza, Froylan Chiquito, and Teresa Castillo. |
|---|---|---|---|
| 25. | TII000034448 | TII000034502 | JJ Harvesting records, food safety, cleaning logs, SOPs, certificates. |
| 26. | TII000034503 | TII000034553 | JJ Harvesting records, restroom service logs, water report, permits, SOPs, certificates. |
| 27. | TII000034554 | TII000034770 | JJ Harvesting records. SOPs, cleaning logs, training certification. |
| 28. | TII000034771 | TII000035417 | JJ Harvesting records, SOPs, sanitation, temperature logs, certifications. |
| 29. | TII000035418 | TII000035567 | JJ Harvesting records. SOPs, sanitation, certificates. |
| 30. | TII000035568 | TII000035846 | JJ Harvesting records, SOPs, sanitation, temperature logs. |
| 31. | TII000035847 | TII000036026 | JJ Harvesting records, SOPs, temperature logs, certifications. |
| 32. | TII000036027 | TII000036181 | J.J. Harvesting records, SOPs, sanitization |

| | | | records, temperature logs, certificates. |
|---|---|---|---|
| 33. | TII000036182 | TII000036926 | JJ Harvesting Records. Food safety, SOPs, certificates. |
| 34. | TII000036927 | TII000036990 | JJ Harvesting records. Food safety training meeting, SOPs, certificates. |
| 35. | TII000036991 | TII000037042 | JJ Harvesting records. Food safety, cleaning, SOPs, certificates. |
| 36. | TII000037043 | TII000037091 | JJ Harvesting records. Food safety, SOPs, certificates. |
| 37. | TII000037092 | TII000037182 | JJ Harvesting records. Food safety, SOPs, certificates. |
| 38. | TII000037183 | TII000037354 | JJ Harvesting records. SOPs, food safety, certificates of completion. |
| 39. | TII00069899 | TII00069904 | IPC/Subway Request for Information |

**Defense Exhibit 2: TII Standard Operating Procedures**

| No. | Begin Bates | End Bates | Description |
|---|---|---|---|
| 1. | TII000003465 | TII000003473 | Master Sanitation SOP |
| 2. | TII000003474 | TII000003476 | Incoming Materials SOP |
| 3. | TII000003507 | TII000003515 | Chemical and Cleaning Inventory List |
| 4. | TII000003516 | TII000003518 | Product log with images of cleaning products used. |
| 5. | TII000003540 | TII000003552 | TII Cleaning Supplies Inventory from 08/16/2019. |
| 6. | TII000003570 | TII000003572 | Dress code SOP's. |
| 7. | TII000003573 | TII000003577 | Emergency Response SOPs. |
| 8. | TII000003578 | TII000003584 | Pre-Operation Inspection Log. |
| 9. | TII000003585 | TII000003601 | Daly cleaning logs for the onion lines. |
| 10. | TII000003602 | TII000003611 | Weekly sanitation logs. |
| 11. | TII000003612 | TII000003616 | Floor drains cleaning and sanitation log beginning on May 8, 2020. |
| 12. | TII000003617 | TII000003645 | Food Defense Plan |
| 13. | TII000003646 | TII000003699 | Pre-Operations log. |
| 14. | TII000017566 | TII000017598 | Table of contents to SOPs revised in 2019. |
| 15. | TII000017727 | TII000017727 | Harvest Container Cleaning/Sanitizing Log (Blank). |
| 16. | TII000017728 | TII000017730 | Cleaning/Sanitizing SOP |

| | | | |
|---|---|---|---|
| 17. | TII000018637 | TII000018637 | Flow chart for onion receiving, packing, shipping Apparently attached to email this date from Annie Baisden to Jack Thomson. Seems she created it to explain product flow to FDA. |
| 18. | TII000018894 | TII000018913 | Life cycle of onion shipping. |
| 19. | TII000025668 | TII000025668 | Nancy Anspach FSPCA Preventive Controls for Human Food, 02/08/2019. |
| 20. | TII000025694 | TII000025712 | Garcia Diamond restroom service. |
| 21. | TII000032067 | TII000032070 | Risk Assessment Growing SOP |
| 22. | TII000032072 | TII000032072 | Food Safety doc in Spanish. |
| 23. | TII000032073 | TII000032077 | GAP Food Safety Plan |
| 24. | TII000032079 | TII000032079 | TII Org Chart |
| 25. | TII000032083 | TII000032085 | Management Review SOP |
| 26. | TII000032086 | TII000032086 | Industry Guidelines/Best Practices |
| 27. | TII000032087 | TII000032087 | TII Resource Analysis |
| 28. | TII000032088 | TII000032089 | Documentation & Record Keep SOP |
| 29. | TII000032095 | TII000032095 | Master Document List, Module 2 |
| 30. | TII000032096 | TII000032127 | SOP Table of Contents |
| 31. | TII000032128 | TII000032130 | How to Write a SOP |

36

| 32. | TII000032131 | TII000032133 | Corrective Action Procedure SOP |
| 33. | TII000032135 | TII000032140 | Regulatory Inspections SOP |
| 34. | TII000032141 | TII000032143 | GAP Land History and Use And Irrigation Water Checklist |
| 35. | TII000032144 | TII000032149 | Growing Area Selection SOP |
| 36. | TII000032157 | TII000032159 | Grower Water Source Inspection SOP |
| 37. | TII000032174 | TII000032177 | Water Microbiological Testing SOP |
| 38. | TII000032178 | TII000032178 | Calibration SOP |
| 39. | TII000032180 | TII000032182 | Material On Hold and Rejected SOP |
| 40. | TII000032183 | TII000032184 | Product Release SOP |
| 41. | TII000032185 | TII000032188 | Buyer & Consumer Complaints & Feedback SOP |
| 42. | TII000032189 | TII000032189 | Farming Operation Approved Suppliers List |
| 43. | TII000032190 | TII000032196 | Supplier Approval & Monitoring SOP |
| 44. | TII000032253 | TII000032255 | Visitor/Contractor SOP |
| 45. | TII000032257 | TII000032261 | Personal Food Training SOP |
| 46. | TII000032275 | TII000032280 | Personal Food Training SOP |
| 47. | TII000032281 | TII000032283 | Disciplinary Action SOP |
| 48. | TII000032284 | TII000032287 | Return to Work SOP |
| 49. | TII000032295 | TII000032298 | Pesticide Management SOP |

| | | | |
|---|---|---|---|
| 50. | TII000032310 | TII000032311 | Chemical/Fertilizer/Pesticide Storage Inventory |
| 51. | TII000032312 | TII000032313 | Pesticide Storage Inventory SOP |
| 52. | TII000032314 | TII000032316 | Preventative Maintenance SOP |
| 53. | TII000032317 | TII000032319 | Work Order/Maintenance SOP |
| 54. | TII000032320 | TII000032322 | 2020 TII Chemical List |
| 55. | TII000032324 | TII000032325 | Food Safety Plan - Farming Operations. |
| 56. | TII000032326 | TII000032327 | 2020 Food Safety Plan - Farming Operations. |
| 57. | TII000033949 | TII000033971 | Micro Testing SOPs with Michelson Lab Reports. |
| 58. | TII000033972 | TII000034015 | 2019 BC Labs and OxiDate Records. |
| 59. | TII000034392 | TII000034447 | JJ Harvesting records. Food Safety Training certificates for Angel Nava, Manuel Cano, Joel Ocampo, Antonio Carranza, Froylan Chiquito, and Teresa Castillo. |
| 60. | TII000034448 | TII000034502 | JJ Harvesting records, food safety, cleaning logs, SOPs, certificates. |
| 61. | TII000034503 | TII000034553 | JJ Harvesting records, restroom service logs, water report, permits, SOPs, |

| | | | |
|---|---|---|---|
| | | | certificates. |
| 62. | TII000034554 | TII000034770 | JJ Harvesting records. SOPs, cleaning logs, training certification. |
| 63. | TII000034771 | TII000035417 | JJ Harvesting records, SOPs, sanitation, temperature logs, certifications. |
| 64. | TII000035418 | TII000035567 | JJ Harvesting records. SOPs, sanitation, certificates. |
| 65. | TII000035568 | TII000035846 | JJ Harvisting records, SOPs, sanitation, temperature logs. |
| 66. | TII000035847 | TII000036026 | JJ Harvesting records, SOPs, temperature logs, certifications. |
| 67. | TII000036027 | TII000036181 | J.J. Harvesting records, SOPs, sanitization records, temperature logs, certificates. |
| 68. | TII000036182 | TII000036926 | JJ Harvesting Records. Food safety, SOPs, certificates. |
| 69. | TII000036927 | TII000036990 | JJ Harvesting records. Food safety training meeting, SOPs, certificates. |
| 70. | TII000036991 | TII000037042 | JJ Harvesting records. Food safety, cleaning, SOPs, certificates. |
| 71. | TII000037043 | TII000037091 | JJ Harvesting records. Food safety, SOPs, certificates. |
| 72. | TII000037092 | TII000037182 | JJ Harvesting records. Food safety, SOPs, certificates. |

| 73. | TII000037183 | TII000037354 | JJ Harvesting records. SOPs, food safety, certificates of completion. |
| 74. | TII000038008 | TII000038025 | Monitoring Logs Procedures |
| 75. | TII00063235 | TII00063513 | General Training SOP |
| 76. | TII000063515 | TII000063539 | Audit Meeting Logs |
| 77. | TII000037631 | TII000037631 | TII Board Conference Call, 01/22/2020 |
| 78. | TII000037632 | TII000037633 | TII Board Meeting Minutes, 03/27/2020 |

**Defense Exhibit 3: Risk Assessments**

| No. | Begin Bates | End Bates | Description |
| --- | --- | --- | --- |
| 1. | TII000032264 | TII000032264 | KEI -BV Risk Assessment |
| 2. | TII000032265 | TII000032265 | KEI SKO Risk Assessment |
| 3. | TII000032266 | TII000032266 | RG 161 Risk Assessment. |
| 4. | TII000032268 | TII000032268 | RR Holtville Ash Risk Assessment. |
| 5. | TII000032269 | TII000032269 | Ranch 3 Risk Assessment |
| 6. | TII000032270 | TII000032270 | TII Glad Risk Assessment |
| 7. | TII000032288 | TII000032288 | Delis Water Source Risk Assessment. |
| 8. | TII000032291 | TII000032291 | KEI Field BV Canal |

| | | | Water Source Risk Assessment. |
|---|---|---|---|
| 9. | TII000032292 | TII000032292 | KEI Field SK Canal Water Source Risk Assessment. |
| 10. | TII000032293 | TII000032293 | TII Glad Water Source Risk Assessment. |
| 11. | TII000032294 | TII000032294 | TII R3 Water Source Risk Assessment |
| 12. | TII000032386 | TII000032387 | Ash 11 Pre-Harvest Risk Assessment |
| 13. | TII000032388 | TII000032389 | BV-Sec 10 Preharvest Risk Assessment. |
| 14. | TII000032419 | TII000032420 | Fld 32 50 ac Preharvest Risk Assessment. |
| 15. | TII000032423 | TII000032424 | Gladestone Pre-harvest Risk Assessment. |
| 16. | TII000032429 | TII000032430 | Pepper 22 Preharvest Risk Assessment. |
| 17. | TII000032432 | TII000032433 | RG-FLD 161 Pre-Harvest Risk Assessment |
| 18. | TII000032434 | TII000032435 | RG161 Preharvest Risk Assessment |
| 19. | TII000032436 | TII000032437 | Skone Preharvest Risk Assessment |
| 20. | TII000032588 | TII000032588 | Holtville Risk Assessments. |

**Defense Exhibit 4: Water Testing**

| No. | Begin Bates | End Bates | Description |
|---|---|---|---|
| 1. | TII000025904 | TII000025916 | Email from Nicole Yuen stating that one of the samples collected does not match the outbreak strain. |
| 2. | TII000032288 | TII000032288 | Delis Water Source Risk Assessment. |
| 3. | TII000002800 | TII000002800 | Michelson Lab report number 072520-M627286A. |
| 4. | TII000017599 | TII000017601 | BC Laboratories, Inc., Water Analysis (Bacteriological), dated 03/04/2019, for Well 1. |
| 5. | TII000017602 | TII000017602 | Water Test |
| 6. | TII000025797.000001 | TII000025797.000002 | FDA Receipt for fields and samples. |
| 7. | TII000032558 | TII000032558 | BC Labs water testing from 13 Palms. |
| 8. | TII000032579 | TII000032586 | BC Labs testing for Well #1. |
| 9. | TII000032590 | TII000032596 | BC Lab reports for bacteriological testing taken on April 10, 2020. |
| 10. | TII000033939 | TII000033948 | BC Labs testing for: Domestic, Packing Plant |

42

|  |  |  | Well, Well, Well<br>Discharge |
|---|---|---|---|

**Defense Exhibit 5: Onion Testing**

| No. | Begin Bates | End Bates | Description |
|---|---|---|---|
| 1. | TII000025764 | TII000025768 | Email between Nicole Yuen and Jack Thomson, indicating that TII onion samples from Bakersfield were all negative for Salmonella. Table of samples included earlier in thread. Some results still pending. |
| 2. | TII000025769 | TII000025775 | Email between Jack Thomson and Nicole Yuen, updating with further salmonella testing of TII samples: All negative. |
| 3. | TII000025797.000001 | TII000025797.000002 | FDA Receipt for fields and samples. |
| 4. | TII000025830 | TII000025837 | Email from Jack Thomson asking Nicole Yuen about sample results. |
| 5. | TII000025942 | TII000025942 | Email with lab results for some FDA samples. |

| | | | |
|---|---|---|---|
| 6. | TII000025946 | TII000025947 | Jack Thomson stated he received an additional negative sample notice from Jennifer Kinney. |
| 7. | TII000026054 | TII000026067 | Jack Thomson thanking Nicole Yuen for informing him of the CDC web post going live. Also updated sample list with some positive salmonella samples. |
| 8. | TII000026099 | TII000026100 | Email string with GPS coordinates of positive salmonella samples from TII. |
| 9. | TII000027225 | TII000027225 | Michelson Lab report 072520-M627284A, DATED 07/25/2020. |
| 10. | TII000003172 | TII000003182 | FDA List of Sample test results. |
| 11. | TII000020475 | TII000020475 | Email from Donna Williams-Hill stating negative salmonella for 43/43 subsamples. |
| 12. | TII000032643 | TII000032650 | Email from Nicole Yuen to Jack Thomson with sample updates. |
| 13. | PH PLAINTIFF 001223 | PH PLAINTIFF 001226 | Email string between Brandon Adcock to Jeff |

|  | | | Vidanes, dated 07/28/2020 |
|---|---|---|---|
| 14. | PH PLAINTIFF 001940 | PH PLAINTIFF 001966 | Memo from Daniel Gorski to Brandi McGrady, dated 08/28/2020. |
| 15. | AUSTIN1663 | AUSTIN1666 | Email from Jeff Vidanes to Michael Needham, dated 07/28/2020. |
| 16. | Exhibit 5 to Kramer Report | | Photographs of Holtville Drain Ditch Sampling Site |
| 17. | Exhibit 7 to Kramer Report | | Photographs from Prosser Washington |

**Defense Exhibit 6: Primus Records**

| No. | Begin Bates | End Bates | Description |
|---|---|---|---|
| 1. | TII000017527 | TII000017557 | Primus Standard Packinghouse Final Audit Report |
| 2. | TII000018302 | TII000018330 | Primus Audit Report for Ranch 3, 2018. |
| 3. | TII000018331 | TII000018332 | Primus Audit Certificate for Ranch 3, June 1, 2018 to May 31, 2019. |
| 4. | TII000023393 | TII000023412 | Primus audit for DiGiogio Rd, |

| | | | |
|---|---|---|---|
| | | | Bakersfield. Audit on 04/20/2020. Certification valid from May 13, 2020 to May 12, 2021. |
| 5. | TII000023413 | TII000023414 | Primus certificate for Ranch 3 at DiGiogio Rd, valid from May 13, 2020 to May 12, 2021. Final audit score 97%. |
| 6. | TII000023446 | TII000023447 | Primus Standard Packinghouse audit from August 28, 2019. Score 94%. |
| 7. | TII000023460 | TII000023477 | Primus Final Audit Report for Kei Filed Skone, located in Tejon Rd, Bakersfield, dated April 20, 2020. |
| 8. | TII000023478 | TII000023482 | Primus Corrective Action Report for Kei Field Skone, dated April 20, 2020. |
| 9. | TII000023483 | TII000023484 | Primus Certificate for Kei Field Skone, Tejon Road, dated from May 28, 2020 to May 27, 2021. Audit score 97%. |
| 10. | TII000023486 | TII000023490 | Primus audit "Corrective Action Report" for Kei Field BV, located at |

| | | | |
|---|---|---|---|
| | | | Buena Vista Blvd, Bakersfield, dated April 20, 2020. |
| 11. | TII000023491 | TII000023509 | Primus Final Audit Report for Kei Field BV dated April 20, 2020. |
| 12. | TII000023510 | TII000023511 | Primus Certificate for Kei Field BV from May 28, 2020 to May 27, 2021. |
| 13. | TII000026686 | TII000026708 | Primus Final Audit Report for Brawley Onions located at Hilfiker Rd & Anderholt Rd & McCabe Rd, Brawley, CA |
| 14. | TII000026709 | TII000026710 | Primus Certificate for Brawley Onions valid from May 15, 2019 to May 14, 2020. Audit score of 95%. |
| 15. | TII000026733 | TII000026734 | Primus Certificate for Evergrow, Hageman & Wegis Bakersfield, CA for May 28, 2019 to May 27, 2020. |
| 16. | TII000026795 | TII000026796 | Primus Certificate for Kirschenmann, Bakersfield, CA, from May 28, 2019 to May 27, |

| No. | Begin Bates | End Bates | Description |
|---|---|---|---|
| | | | 2020. |
| 17. | TII000026837 | TII000026838 | Primus Certificate for Ranch 3, Bakersfield, CA, from May 28, 2019 to May 27, 2020. |
| 18. | TII000027060 | TII000027091 | Primus audit report for Highline Cooling LLC located in Holtville, CA on January 8, 2020. |
| 19. | TII000027092 | TII000027099 | Primus corrective action report for Highline Cooling LLC. |
| 20. | TII000027100 | TII000027101 | Primus Certificate for Highline Cooling LLC. |
| 21. | TII000032023 | TII000032024 | 2020 Primus GFS Gladstone Certificate. |
| 22. | TII000032056 | TII000032057 | Primus KEI Field Skone Certificate, 05/28/2020 to 05/27/2021. |
| 23. | TII000034351 | TII000034371 | Ash 11 Primus Report. |
| 24. | TII000037978 | TII000038000 | Primus Audit binder. |

**Defense Exhibit 7: TII Fields**

| No. | Begin Bates | End Bates | Description |
|---|---|---|---|
| 1. | TII000017723 | TII000017723 | 2020 lot chart. |
| 2. | TII000019908 | TII000019923 | GPS Field Locations |
| 3. | TII000032256 | TII000032256 | Ranch 3 Site Map. |
| 4. | TII000032262 | TII000032262 | Ranch 3 Map |

| | | | |
|---|---|---|---|
| 5. | TII000032263 | TII000032263 | Ranch 3 Operations Map |
| 6. | TII000032323 | TII000032323 | Field crop history. |